663 S.E.2d 85

**Jesse HOUSTON, Appellant,**

v.

**DELOACH & DELOACH, Respondent.**

**No. 4408.**

Court of Appeals of South Carolina.

Heard June 3, 2008.

Decided June 10, 2008.

544

Darrell Thomas Johnson, Jr. and Warren Paul Johnson, both of Hardeeville, for Appellant.

Allison M. Carter, of Mount Pleasant, for Respondent.

ANDERSON, J.

Jesse Houston appeals the circuit court's order affirming the decision of the appellate panel of the South Carolina Workers' Compensation Commission which denied him benefits for injuries suffered in a motor vehicle accident. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On Saturday, August 23, 2003, Jesse Houston (Claimant) was injured in a motor vehicle accident while riding as a passenger in a commercial dump truck owned by his employer, Deloach & Deloach (Employer). Employer denied the claim, arguing that Claimant was outside the scope of his employment at the time of the accident.

Claimant testified that prior to the injury he had been authorized to train a prospective employee named Marlene Gadson (Gadson) to drive a dump truck. Claimant averred he had been training Gadson for approximately two weeks at the time of the accident. Neither party disputed that Gadson was authorized to train with Claimant or that Gadson was training with Claimant on the morning of the accident. Gadson professed that on the day of the accident she had a disagreement with Claimant and ceased her training at approximately 11:00 a.m. She vouched that Claimant was drinking beer the morning of the accident.

After Gadson exited the dump truck, Claimant picked up Leslie Brown (Brown). Brown had never trained to drive a dump truck prior to the date of the accident, but Claimant allowed her to drive the truck while fully loaded with asphalt that same day. Although the dump truck had only two seats in its cab, Claimant and Brown picked up an unauthorized passenger, Kimberly Blake, at some point during the day. Neither Brown nor Blake was employed by Employer. Brown subsequently wrecked the truck, injuring Claimant.

The testimony conflicted over whether Claimant had permission to allow Brown to drive the truck. Claimant contended he first met Brown on Tuesday, August 19, 2003, and on that day Otis Deloach (Deloach), owner of Employer and Claimant's boss, expressly permitted him to train Brown to drive the dump truck. He advanced that this permission was given in the company of Alfred Ervin and Leroy Stevenson, both employees of Employer. Deloach maintained that he did not give Claimant permission to train Brown, and he never met Brown prior to the August 23, 2003 accident. Brown · stated she had not met Claimant prior to the date of the accident. She first heard of Employer the day before the accident.

Alfred Ervin (Ervin) declared he had no knowledge of Deloach giving Claimant permission to train Brown. Ervin substantiated that before he ever drove a loaded dump truck, he trained with an unloaded truck for approximately ten days. Leroy Stevenson asseverated he did not observe Deloach give the Claimant permission to train Brown.

The commissioner issued an order finding Claimant suffered compensable injuries within the course and scope of his employment. An appeal was heard by the appellate panel of the Workers' Compensation Commission. The appellate panel issued a split decision where the majority made the following findings of fact:

1. That the Claimant did not have the authority or permission to allow Ms. Brown to drive the Employer's loaded dump truck at the time of the accident.

2. That skill and training are required to drive a commercial dump truck filled with asphalt.

3. That the Claimant did not have permission to drink alcoholic beverages during the time period he was performing job duties.

4. That the Claimant's act in allowing an unauthorized person to drive his Employer's truck constituted an impermissible deviation from his duties, and therefore, the accident did not arise out of the course and scope of his duties.

5. That the Claimant's injuries to his left lower extremity, right arm, and neck did not occur in the course and scope of employment on August 23, 2003, and he is therefore not

entitled to benefits under the South Carolina Workers' Compensation Act.

The appellate panel announced its conclusions of law:

1. Under S.C.Code Ann. § 42–1–160, the Claimant did not sustain an injury by accident arising out of and in the course of his employment.

2. That the Claimant's actions deviated outside the course and scope of employment by using a company vehicle in an inappropriate and unauthorized manner. *Boykin v. Prioleau*, 255 S.C. 437, 179 S.E.2d 599 (1971).

The circuit court issued an order affirming the appellate panel's denial of benefits. The circuit court denied Claimant's motion to alter or amend judgment pursuant to Rule 59, SCRCP.

## ISSUES

1. Does substantial evidence support the appellate panel's finding that Claimant allowed an unauthorized person to drive the Employer's dump truck which resulted in an impermissible deviation from his duties?

2. Did the circuit court and appellate panel commit an error of law in determining Claimant did not sustain an injury by accident arising out of and in the course of his employment?

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act governs judicial review of a decision of the Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134, 276 S.E.2d 304, 306 (1981); *Bass v. Isochem*, 365 S.C. 454, 467, 617 S.E.2d 369, 376 (Ct.App.2005); *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 288, 599 S.E.2d 604, 610 (Ct.App.2004). Pursuant to the APA, an appellate court's review is limited to deciding whether the full commission's decision is unsupported by substantial evidence or is controlled by some error of law. *Grant v. Grant Textiles*, 372 S.C. 196, 200, 641 S.E.2d 869, 871 (2007); S.C.Code Ann. § 1–23–380(A)(5) (Supp.2006).

## I. Substantial Evidence Standard

The judicial review of the appellate panel's factual findings is governed by the substantial evidence standard. *Gadson v. Mikasa Corp.,* 368 S.C. 214, 221, 628 S.E.2d 262, 266 (Ct.App.2006); *Frame v. Resort Servs., Inc.,* 357 S.C. 520, 527, 593 S.E.2d 491, 494 (Ct.App.2004); *Corbin v. Kohler Co.,* 351 S.C. 613, 617, 571 S.E.2d 92, 94–95 (Ct.App.2002); *Lockridge v. Santens of America, Inc.,* 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001). The appellate panel's decision must be affirmed if supported by substantial evidence in the record. *Shuler v. Gregory Elec.,* 366 S.C. 435, 440, 622 S.E.2d 569, 571 (Ct.App.2005) (citing *Sharpe v. Case Produce, Inc.,* 336 S.C. 154, 160, 519 S.E.2d 102, 105 (1999)). A reviewing court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. S.C.Code Ann. § 1–23–380(A)(5)(d)(e) (Supp.2006); *see also Hall v. United Rentals, Inc.,* 371 S.C. 69, 77, 636 S.E.2d 876, 881 (Ct.App.2006). However, a reviewing court may reverse or modify a decision of the appellate panel if the findings, inferences, conclusions, or decisions of the panel are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(A)(5)(e) (Supp.2006); *Bass v. Kenco Group,* 366 S.C. 450, 457, 622 S.E.2d 577, 580 (Ct.App.2005); *Bursey v. S.C. Dep't of Health & Envtl. Control,* 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct.App.2004), *aff'd,* 369 S.C. 176, 631 S.E.2d 899 (2006).

It is not within the appellate court's province to reverse the appellate panel's factual findings if they are supported by substantial evidence. *Etheredge v. Monsanto Co.,* 349 S.C. 451, 454, 562 S.E.2d 679, 681 (Ct.App.2002) (citing *Hoxit v. Michelin Tire Corp.,* 304 S.C. 461, 405 S.E.2d 407 (1991)); *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 282, 519 S.E.2d 583, 591 (Ct.App.1999). Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Pratt v. Morris Roofing, Inc.,* 357 S.C. 619, 622, 594 S.E.2d 272, 274 (2004); *Jones v. Georgia–Pacific Corp.,* 355 S.C. 413, 417, 586 S.E.2d 111, 113 (2003); *Brown v. Greenwood Mills, Inc.,* 366 S.C. 379, 392, 622 S.E.2d 546, 554 (Ct.App.

2005); *Broughton v. South of the Border,* 336 S.C. 488, 495, 520 S.E.2d 634, 637 (Ct.App.1999). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Sharpe,* 336 S.C. at 160, 519 S.E.2d at 105; *Smith v. NCCI Inc.,* 369 S.C. 236, 247, 631 S.E.2d 268, 274 (Ct.App.2006); *DuRant v. S.C. Dep't of Health & Envtl. Control,* 361 S.C. 416, 420, 604 S.E.2d 704, 707 (Ct.App.2004).

The appellate panel is the ultimate fact finder in workers' compensation cases and is not bound by the single commissioner's findings of fact. *Isochem,* 365 S.C. at 468, 617 S.E.2d at 376; *Frame,* 357 S.C. at 528, 593 S.E.2d at 495; *Muir,* 336 S.C. at 281, 519 S.E.2d at 591. The final determination of witness credibility and the weight assigned to the evidence is reserved to the appellate panel. *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000); *Frame,* 357 S.C. at 528, 593 S.E.2d at 495. Where there are conflicts in the evidence over a factual issue, the findings of the appellate panel are conclusive. *Brown,* 366 S.C. at 393, 622 S.E.2d at 554; *Etheredge,* 349 S.C. at 455, 562 S.E.2d at 681; *see also Mullinax v. Winn–Dixie Stores, Inc.,* 318 S.C. 431, 435, 458 S.E.2d 76, 78 (Ct.App.1995) ("Where the medical evidence conflicts, the findings of fact of the [appellate panel] are conclusive.").

The findings of the appellate panel are presumed correct and will be set aside only if unsupported by substantial evidence. *Kenco Group,* 366 S.C. at 458, 622 S.E.2d at 581; *Frame,* 357 S.C. at 528, 593 S.E.2d at 495; *Broughton,* 336 S.C. at 496, 520 S.E.2d at 637. The appellate court is prohibited from overturning findings of fact of the appellate panel unless there is no reasonable probability the facts could be as related by the witness upon whose testimony the finding was based. *Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 611 S.E.2d 297, 301, 363 S.C. 612, 621 (Ct.App.2005); *Hargrove,* 360 S.C. at 290, 599 S.E.2d at 611; *Etheredge,* 349 S.C. at 455–56, 562 S.E.2d at 681. The appellate panel's factual findings will normally be upheld; however, such a finding may not be based upon surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it. *Tiller v. Nat'l Health Care Ctr. of Sumter,*

334 S.C. 333, 339, 513 S.E.2d 843, 845 (1999); *Muir,* 336 S.C. at 282, 519 S.E.2d at 591; *Sharpe v. Case Produce Co.,* 329 S.C. 534, 543, 495 S.E.2d 790, 794 (Ct.App.1997), *rev'd on other grounds,* 336 S.C. 154, 519 S.E.2d 102 (1999).

## II. Errors of Law

An appellate court may reverse or modify the decision of the appellate panel if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are affected by other error of law. S.C.Code Ann. § 1–23–380(A)(5)(d) (Supp.2006); *Porter v. Labor Depot,* 372 S.C. 560, 567, 643 S.E.2d 96, 100 (Ct.App. 2007), *cert. denied,* Dec. 5, 2007; *Bass v. Isochem,* 365 S.C. 454, 467, 617 S.E.2d 369, 376 (Ct.App.2005); *Pratt v. Morris Roofing, Inc.,* 353 S.C. 339, 344, 577 S.E.2d 475, 477 (Ct.App. 2003), *aff'd as modified,* 357 S.C. 619, 594 S.E.2d 272 (2004).

Section 14–3–330 of the South Carolina Code (Supp.2006) vests the South Carolina Supreme Court with "appellate jurisdiction for correction of errors of law in law cases. . . ." Citing both section 14–3–330 and South Carolina Constitution, article V, section 5, the supreme court has held an appellate court may decide novel questions of law with "no particular deference to the lower court." *Madison ex rel. Bryant v. Babcock Ctr., Inc.,* 371 S.C. 123, 134, 638 S.E.2d 650, 656 (2006); *Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000). Section 14–8–200(a) of the South Carolina Code (Supp.2006) provides the Court of Appeals "shall apply the same scope of review that the Supreme Court would apply in a similar case."

An appellate court's review of factual findings in a workers' compensation case is governed and controlled by the substantial evidence rule. However, an appellate court freely and absolutely reviews a trial court's decision concerning an issue of law. *See Lizee v. S.C. Dep't of Mental Health,* 367 S.C. 122, 126, 623 S.E.2d 860, 863 (Ct.App.2005) ("[W]here the Commission's decision is controlled by an error of law, this court's review is plenary."). No passivity or complaisance is owed or given to the ruling of the appellate panel or circuit judge in this context. The highly deferential standards statutorily and universally applied in reviewing issues of fact, such as the "clearly erroneous" and the "manifest error" standards,

have no efficacy in regard to an issue of law. "The South Carolina Court of Appeals exercises freedom and independence in deciding an issue of law in a workers' compensation case." *Thompson ex rel. Harvey v. Cisson Const. Co.*, 377 S.C. 137, 659 S.E.2d 171 (Ct.App.2008).

## *LAW/ANALYSIS*

"The South Carolina Workers' Compensation Act requires that, to be compensable, an injury by accident must be one 'arising out of and in the course of employment.' " *Osteen v. Greenville County Sch. Dist.*, 333 S.C. 43, 49, 508 S.E.2d 21, 24 (1998). *See also* S.C.Code Ann. § 42–1–160 (Supp.2007); *Grant v. Grant Textiles*, 372 S.C. 196, 201, 641 S.E.2d 869, 871 (2007); *Hall v. Desert Aire, Inc.*, 376 S.C. 338, 348, 656 S.E.2d 753, 758 (Ct.App.2007). "Although the requirements are somewhat overlapping, they are not synonymous and both must exist simultaneously to allow the claimant to recover workers' compensation benefits." *Hall*, 376 S.C. at 349, 656 S.E.2d at 758.

The question of whether an injury arises out of and is in the course and scope of employment is largely a question of fact for the Workers' Compensation Commission's appellate panel. *Broughton v. South of the Border*, 336 S.C. 488, 496, 520 S.E.2d 634, 638 (Ct.App.1999). The claimant has the burden of proving facts that will bring the injury within the workers' compensation law. *Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 518, 526 S.E.2d 725, 729 (Ct.App. 2000); *accord Clade v. Champion Laboratories*, 330 S.C. 8, 11, 496 S.E.2d 856, 857 (1998); *Sola v. Sunny Slope Farms*, 244 S.C. 6, 10, 135 S.E.2d 321, 324 (1964).

## I. "Arising Out Of"

The phrase "arising out of" in the Workers' Compensation Act refers to the injury's origin and cause. *Osteen*, 333 S.C. at 50, 508 S.E.2d at 24; *Baggott v. Southern Music, Inc.*, 330 S.C. 1, 5, 496 S.E.2d 852, 854 (1998). For an injury to "arise out of" employment, the injury must be proximately caused by the employment. *Osteen*, 333 S.C. at 50, 508 S.E.2d at 24. *See also Fowler v. Abbott Motor Co.*, 236 S.C. 226, 230, 113 S.E.2d 737, 739 (1960) (accident "arises out of" employ-

ment when it arises because of it, as when the employment is a contributing proximate cause). "It must be apparent to the rational mind, considering all the circumstances, that a causal relationship exists between the conditions under which the work is performed and the resulting injury." *Hall,* 376 S.C. at 350, 656 S.E.2d at 759 (citing *Smith v. NCCI, Inc.,* 369 S.C. 236, 253, 631 S.E.2d 268, 277 (Ct.App.2006); *Broughton v. South of the Border,* 336 S.C. 488, 497, 520 S.E.2d 634, 638 (Ct.App.1999)). In *Douglas v. Spartan Mills, Startex Div.,* 245 S.C. 265, 140 S.E.2d 173 (1965), our supreme court discussed the "arising out of" requirement:

It (the injury) arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

*Id.,* 245 S.C. at 269, 140 S.E.2d at 175 (quoting *Eargle v. S.C. Elec. & Gas Co.,* 205 S.C. 423, 429–30, 32 S.E.2d 240, 242–43 (1944); *In re Employers' Liability Assur. Corp.,* 215 Mass. 497, 102 N.E. 697, 697 (1913)).

## II. "In the Course of the Employment"

The phrase "in the course of the employment" refers to the time, place, and circumstances under which the accident occurred. *Owings v. Anderson County Sheriff's*

*Dep't,* 315 S.C. 297, 433 S.E.2d 869 (1993); *Loges v. Mack Trucks, Inc.,* 308 S.C. 134, 417 S.E.2d 538 (1992); *Hall,* 376 S.C. at 349, 656 S.E.2d at 758; *Gray v. Club Group, Ltd.,* 339 S.C. 173, 187, 528 S.E.2d 435, 443 (Ct.App.2000). An injury occurs "in the course of" employment within the meaning of the Workers' Compensation Act when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while fulfilling those duties or engaged in something incidental thereto. *Baggott,* 330 S.C. 1, 496 S.E.2d 852; *Fowler,* 236 S.C. 226, 113 S.E.2d 737; *Broughton,* 336 S.C. at 498, 520 S.E.2d at 639.

### III. Impermissible Deviation

In *Boykin v. Prioleau,* 255 S.C. 437, 179 S.E.2d 599 (1971), an employee was assigned to take several co-workers home after work. "Instead of doing so, he took them on an extensive joy ride. During the course of this jaunt some intoxicants were consumed while stops were made at two houses, two night clubs and, finally, at a restaurant several miles out Farrow Road at about 5:45 A.M." *Id.* at 440, 179 S.E.2d at 600. While the employee was driving back to Columbia to take the co-workers home, the vehicle was involved in a fatal accident. *Id.*

The supreme court articulated:

The only reasonable inference from the facts which have been stated is that almost immediately upon driving away from his employer's place of business, Dickerson forsook the task assigned to him and embarked upon the pursuit of his own ends. It is abundantly clear that while thus engaged he was not conducting his employer's business within the meaning of the [workers' compensation] statute.

*Id.* at 441, 179 S.E.2d at 600.

The appellate panel correctly applied *Boykin* to the facts of this case when concluding "Claimant's actions deviated outside the course and scope of employment by using a company vehicle in an inappropriate and unauthorized manner."

In *Brownlee v. Wetterau Food Services,* 288 S.C. 82, 339 S.E.2d 694 (Ct.App.1986), this Court held that an employee who died in an automobile accident while out of town on

business was not acting within the scope of and in the course of his employment at the time of death. Brownlee, who worked out of the employer's North Charleston office, was sent to St. Louis, Missouri to attend a training seminar. *Id.* at 84, 339 S.E.2d at 695. The seminar began each day around 7:00 a.m. and ended at 10:00 p.m. *Id.* Everyone attending the seminar from out of town roomed at the motel where all of the seminar activities took place. *Id.*

The accident occurred at 1:55 a.m., apparently when the employee and several other seminar attendees were returning from watching a movie. *Id.* The movie was an outing planned by Brownlee and other attendees after the end of the seminar's daily events. *Id.* Because the accident occurred some distance from the motel and several hours after the last scheduled seminar event had ended, we held: "there is substantial evidence Brownlee died while engaged in an outing that occurred after work, away from the premises of his employer, and at a time when his employer exercised no control over his activities." *Id.* at 85, 339 S.E.2d at 695.

The present case can be distinguished from *Hall v. Desert Aire, Inc.,* 376 S.C. 338, 656 S.E.2d 753 (Ct.App.2007). In *Hall,* the employee and another individual went for a jeep ride after a dinner party where alcohol was consumed. *Id.* at 345, 656 S.E.2d at 756–57. The employer regularly paid for entertainment, including alcohol, which was common practice for the industry. *Id.* The evidence indicated that the discussions at the dinner party were strictly related to the employer's business, and the two intended on continuing their business discussions in the jeep. *Id.* The jeep overturned approximately 300 yards from where the ride started, wounding Hall and killing the driver. *Id.*

This Court determined:

Pellucidly, the evidentiary record exuberates that Hall was engaged in ongoing discussions regarding planning for sales activities on behalf of Desert Aire at the time of the accident. The accident occurred within the period of employment, at a place where Hall was reasonably in the performance of his duties and was fulfilling those duties or engaged in activities incidental to that employment. Like the claimants in *Beam,* Hall was not exercising a personal

privilege wholly apart from Desert Aire's interests. Rather, Hall's ongoing business discussion with Brunner was an act, incidental to and recognized as beneficial by Desert Aire in connection with Hall's duties as national sales manager.... We hold substantial evidence supports the factual finding that Hall's injury arose out of and in the course of employment with Desert Aire, illatively satisfying the legal standard for compensability under section 42–1–160 of the South Carolina Code of Laws.

*Id.* at 360–61, 656 S.E.2d at 764–65 (citing *Beam v. State Workmen's Compensation Fund*, 261 S.C. 327, 200 S.E.2d 83, (1973)).

The case *sub judice* differs from *Hall*, where Hall was advancing his employer's interests by discussing business on the jeep ride. Although the parties in the present case dispute whether Claimant was authorized to train Brown and allow her to drive the truck, there is substantial evidence to support the appellate panel's finding that Brown was not authorized to drive the truck. By allowing Brown to drive, Claimant deviated from the task he was assigned to do: haul asphalt from a plant to a road construction site. The deviation resulted in an accident that injured him, and thus, Claimant's injuries did not arise out of and in the course of his employment with Deloach & Deloach.

## CONCLUSION

The factual findings of the appellate panel are presumed correct and will only be set aside if unsupported by substantial evidence. *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 519, 466 S.E.2d 357, 359 (1996). We rule there is substantial evidence to support the factual finding that allowing Brown to drive the dump truck was an impermissible deviation from Claimant's duties. We hold Claimant's injuries did not arise out of and in the course of his employment. We place our imprimatur upon the rulings of law by the appellate panel and the circuit court.

Accordingly, the order of the circuit court is

**AFFIRMED.**

HUFF and KITTREDGE, JJ., concur.